Mincey *v.* Bradburn.

MINCEY   *v.*   BRADBURN.

(*Knoxville.*     October   19,   1899.)

1. MUNICIPAL CORPORATIONS. *Delay to advertise impounded stock that does not vitiate sale.*

   Delay of five days to advertise an impounded mule will not vitiate the sale of the stock and defeat the title of an innocent purchaser, especially when the delay was employed in a search for the owner.   (*Post, pp. 408–412.*)

2. SAME.   *Impounding ordinance unreasonable and void, when.*

   A municipal ordinance that directs sale of impounded stock upon two days advertisement is unreasonable and void, and a purchaser at a sale thereunder or his innocent vendee acquires no title.   (*Post, pp. 412–414.*)

   Cases cited: Knoxville *v.* King, 7 Lea, 444; Moon *v.* State, 11 Lea, 35.

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County.  J. W. SNEED, J.

T. L. CARTY for Mincey.

CHAS. NELSON for Bradburn.

WILKES, J.  This is a lawsuit arising out of the unlawful act of a disorderly mule. He was found loitering about the streets of Knoxville, without

any apparent business, no visible means of support, and no evidence of ownership, except a yoke on his neck. This yoke was evidence that the mule had been, at some time, in a state of subjection, but did not indicate to whom. Although he does not appear to have been drunk or boisterous, a vigilant officer of the police ' of the city arrested him and took him to the lockup. The policeman was authorized to do this by a city ordinance. which was no doubt intended and well calculated to preserve the lives of the people and the good order of the city by prohibiting mules from being loose in the streets.

The mule was arrested on the 7th of September and was locked up in the city pound. The poundkeeper did not know who he belonged to, and the mule made no disclosure of his ownership. The poundkeeper, it appears, went to the market house and inquired of the butchers if a mule had escaped from any one of them. Why he should suppose that a butcher's stall should be an appropriate place to find out the owner of a live mule does not appear. The poundkeeper further inquired of such country people as he could find, if they knew of any one who had lost a mule. A farmer, who lived out about three miles from the city, said that one of his neighbors had lost a mule, and requested that no advertisement be made until he could see if the mule was his neighbor's. When the farmer asked his

neighbor if he had lost a mule he was told that, unfortunately, he had not. In this way five days elapsed before any advertisement was made. In the meantime, the mule was kept in close confinement, and refused to be interviewed. On the 12th of September, or five days after the mule was arrested, the poundmaster advertised in the *Knoxville Journal and Tribune* that the mule would be sold on the 14th, unless called for and charges paid; and no one calling, the mule was sold publicly for cash for $20, and one O. T. Smith became the purchaser. The costs and charges were paid out of the proceeds of sale, and the balance was left in the city treasury, to be called for by the owner. What this balance was does not appear. It is stated in the record that it was $— (blank dollars). Whether this means that there was no balance, or that the amount was unknown and not material, is left in doubt. Mr. Smith, the purchaser, sold the mule to Mincey, but for what sum does not appear. Mincey, it appears, bought the mule in good faith, and did not know that he had ever been arrested or confined in the city lockup, or that he had been sold by the city. So far as he knew, the mule had the usual good reputation of his species. In the meantime, Mr. Bradburn, to whom the mule belonged, missed him from his corn crib, and supposed he had gone to Sevier County, where he came from originally. He made inquiries, however, and among

other things went to a telephone station to inquire of the poundkeeper if he had such a mule.
It appeared, however, that "Central" was busy or
gone to dinner, and Mr. Bradburn couldn't reach
the poundkeeper. He thereupon asked Mr. Clarke
to telephone for him. Mr. Clarke reported that
word came back to him from the other end
of the line that there was no mule there. It
does not appear who was at the other end of
the line, so that the truth of this answer is not
verified. The mule, however, did not return to
Sevier County, but preferred to be locked up in
Knoxville.

Mr. Bradburn did not see the advertisement
in the *Journal and Tribune;* probably he didn't
take that paper, but read the *Sentinel.* Counsel
says that the advertisement was put in an obscure
place. Exactly what he means the Court to infer
from that, we are unable to see. The Court
cannot judicially know there is anything obscure
in any Knoxville paper, unless it be in the reports of Supreme Court opinions, and these appear
to be obscure only to the lawyers who lose their
cases. After the sale and plaintiff found out
where his mule was, he replevied him. The case
was tried before the Court and jury in the Court
below, and plaintiff was successful, and defendant
has appealed; but he has been paid back the
money he paid for the mule, and the further
proceedings do not appear to interest him. The

city comes in, however, by counsel, and complains earnestly at the charge of the Circuit Judge. The learned trial Judge charged that an ordinance of the city, which provided for a sale of animals impounded, after only two days' advertisement, was unreasonable and invalid; that two days was not sufficient notice to give, and a sale under such advertisement would be void, and confer no title on the purchaser, and he could communicate none to a party who bought from him even without notice. The learned trial Judge also charged that the proceeding by the municipality to sell impounded stock being a summary proceeding, must be strictly pursued; that the poundmaster should immediately, upon impounding the animal, make the advertisement, and that if the mule was impounded on the 7th, and not advertised till the 12th, it was not a compliance with the ordinance, and a sale thereunder would be null and void, and communicate no title to the purchaser, and he could convey none to his vendee; that, no matter if the poundmaster made the delay with good intentions, hoping to find the owner, it would furnish no excuse.

The city attorney insists that this is requiring too great a degree of diligence on the part of the poundmaster, and that a reasonable delay will not vitiate his sale, especially when that delay is caused by trying to find the owner.

The argument is that the word immediately, as

used in the ordinance, does not mean instantaneously; that the poundkeeper must have sufficient time to shut the pound gate so as to keep the mule in, before he starts to the printing office; that, after he does start he may proceed in a brisk walk, and is not required to run; that after he gets there time must be allowed to set up the matter in type, and there must then be a delay until the hour when the paper is printed and ready for distribution, and that the poundkeeper is not required to get out an extra.

We are satisfied the learned trial judge did not mean to require such dispatch as this, and without undertaking to say how rapidly the poundmaster must proceed, we are of opinion that, under all the facts of this case, there was no such unreasonable delay as would render the sale void.

Now, if the mule was the party complaining, the Court would feel disposed to say the delay was too great, as it does not appear that the mule had anything to eat during his stay as the city's guest. But neither the city nor the owner has any ground of complaint.

It is said by counsel that the other question presented is an exceedingly important one, and we approach it with a deep feeling of responsibility.

Counsel for plaintiff says the ordinance is unreasonable, and the charge was necessary to correct a great and growing evil. What this evil is the record does not disclose. It is not alleged that

any great trust or combine is being formed in impounded mules, and it is not shown that any trust at all exists as to mules running loose.

The attorney for the city has furnished us a printed brief, which we have read with much interest and profit, and have filed away for future reference.

In it a case is cited from North Carolina where the Supreme Court of that State held that three days' advertisement of an impounded hog was sufficient. *Shaw* v. *Kennedy,* Term. R., 158; *Helen* v. *Noe,* 3 Iredell, 493.

Also a case from Missouri holding that three days' advertisement of impounded cattle was sufficient. *White* v. *Harworth,* 21 Mo. App., 439.

Under a former ordinance of the city of Knoxville, it was held that five days' notice by posters at the courthouse door was sufficient. *Mayor of Knoxville* v. *King,* 7 Lea, 444.

In the case of *Moon* v. *The State,* 11 Lea, 35, it was held that an ordinance of the taxing district of Memphis, providing that impounded stock might be sold on four days' advertisement, was valid.

Now, if it would take four days to affect the city of Memphis with notice, it is said it would not require less time to reach the public in Knoxville.

The argument of the city attorney seems to be that if a hog may be sold in three days, a

Mincey *v.* Bradburn.

mule might be sold in two days, since he is much more of a nuisance and much more dangerous to keep, and the city ought not to be expected to remain forever on guard. Now we do not desire to say anything disrespectful of or derogatory to the mule. He has no posterity to protect and keep alive his memory. The ordinance applies to all animals, and we are of opinion that two days' advertisement is not enough. No owner would feel any great sense of loss in so short a time.

We feel constrained, upon the ground stated, that the time is too short, and declare the ordinace unreasonable, and the judgment must be affirmed.

The defendant must pay all cost. We would tax the city with it as it loses one of its ordinances, but we are unable to tell from the partial transcript whether the city is a party or not.